IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY MEL ABUIZ, :
:
       Plaintiff, : No. 4:06-CV-01603
:
  v. : (Judge McClure)
:
WARDEN WILLIAM BRENNAN, :
et. al. : (Magistrate Judge Smyser)
:
       Defendants. :

**MEMORANDUM**

May 27, 2010

**BACKGROUND:**

On August 16, 2006, plaintiff Timothy Mel Abuiz, a state prisoner currently residing at the Cape Vincent Correctional Facility in Cape Vincent, NY, proceeding pro se, commenced this action by filing a complaint under 28 U.S.C. § 1331 based on events that took place while he was located at the Susquehanna County Correctional Facility (hereinafter "SCCF") in Montrose, PA. Plaintiff filed a second amended complaint on June 22, 2007. (Rec. Doc. No. 73).

The case was initially referred to United States Magistrate Judge J. Andrew Smyser. The magistrate judge construed the complaint as if it had been brought under 42 U.S.C. § 1983. Abuiz named as defendants William Brennan (prison

1

warden at the time of the events in question, now retired), Nicholas Conigliaro (deputy warden at the time of the events in question, now warden), Susquehanna County Correctional Facility, and Susquehanna County. The complaint asserted that plaintiff's constitutional rights were violated by the conditions of his confinement (Count I), that the defendants withheld his legal mail (Count II), that he was racially segregated (Count III), and that he was denied access to legal materials (Count IV).

On May 28, 2009, this court dismissed Susquehanna County Correctional Facility from the action, granted Susquehanna County summary judgment on all counts, granted Brennan and Conigliaro summary judgment on counts II and IV, but denied Brennan and Conigliaro summary judgment on counts I and III.

No jury demand was filed, so on February 4 and 8, 2010, the case went to a non-jury trial against Brennan and Conigliaro on counts I and III[1]. At the conclusion of trial, the court directed the parties to file Proposed Findings of Fact and Conclusions of Law within 21 days of each party's receipt of the transcript. Plaintiff filed his Proposed Findings of Fact and Conclusions of Law on March 29,

---

[1]Abuiz participated in the trial by telephone from the Cape Vincent Correctional Facility. The New York State authorities rejected the court's request to have him participate by videoconference. The New York State officials and the United States Marshall's Service had previously advised that neither had the authority to transport Abuiz to court for trial.

2010. (Rec. Doc. Nos. 234 and 235). On April 5, 2010, this court directed defendants to file their Proposed Findings of Fact and Conclusions of Law by April 12, 2010, and warned that if they did not do so, we would proceed without the benefit of their Proposed Findings of Fact and Conclusions of Law. Defendants filed their Proposed Findings of Fact and Conclusions of Law on April 8, 2010[2]. (Rec. Doc No. 237 and 238).

Now, therefore, for the following reasons we find that plaintiff has not met his burden of proof by a preponderance of the evidence, and, as a result, we find in favor of defendants and against plaintiff. We will enter final judgment in favor of defendants on Counts I and III.

**DISCUSSION:**

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Id. "Judgment must be entered

---

[2]Plaintiff filed three documents which stated his opposition to our using defendant's Proposed Findings of Fact and Proposed Conclusions of Law filed after the original 21 day time period. (Rec. Doc. Nos. 239, 240 and 241). We are accepting the filing because it is in compliance with our April 5, 2010 order.

under rule 58." Id. "Every judgment and amended judgment must be set out in a separate document." Fed. R. Civ. P. 58.

## A. Findings of Fact

Based on the testimony at trial, the court makes the following findings of fact:

On February 15, 2005, Timothy Mel Abuiz arrived at the Susquehanna County Correctional Facility as a pretrial detainee. Abuiz was placed in a housing unit block called "E Block." On March 28th, 2005 there was an incident on E Block with inmates flooding the cells by intentionally clogging the toilets, which caused the prison's Deputy Warden, Nicholas Conigliaro, to place the inmates on lock down. The following day, Abuiz was brought to discuss the incident with Conigliaro and Warden William Brennan. Based on the suspicion that Abuiz was involved with the flooding, Abuiz was moved to a different housing unit called "A-Block" in prehearing detention status. Additionally, a strip search produced contraband. A-Block is a block of the corrections facility used for multiple purposes. Abuiz remained in A-Block until May 18, 2005.

Abuiz testified that when he entered the cell in A Block, the light did not work and the water faucet at the sink did not work. Conigliaro testified that the water had limited pressure, as opposed to full pressure. (It is not necessary for the

4

court to resolve this conflict in testimony, as it is not relevant to the constitutional analysis.) During his first week-and-a-half in A-Block, plaintiff had access to drinking water only during meal times, which meant he had no access to drinking water from approximately 6 p.m. to 7 a.m. During his tenure in A-Block, he was taken out of the cell daily to take a shower, with the exception of the first week-and-a-half, when he only took four showers. At least twice, the reason Abuiz did not take a shower was because he refused. While in A-Block, Abuiz was given a razor to shave his face several times, he was out of A-Block to see the mental health counselor, and he went to D-Block to have recreation several times.

Approximately a week-and-a-half after he was placed in the cell in A-Block, plaintiff was given a one-gallon jug of drinking water, juice and Kool-Aid that was kept within his reach, just outside of his cell. The practice throughout the prison was for juice and Kool-Aid to be supplied to all of the inmates, not just in A-Block. From this gallon jug, he could fill his drinking cup, brush his teeth and wash his hands. Abuiz remained in A-Block for five weeks, during which his faucet never provided running water, and he had to use the jug for water (once it was available after the first week-and-a-half). He was therefore unable to wash his hands with running water after using the bathroom in his cell.

Because the light in his cell was out, Abuiz would sit by the front of the cell

to get lighting from outside the cell; otherwise, the lighting in the cell was insufficient to read a book or write letters.  Abuiz is legally blind in his left eye, so the strain on his right eye caused him headaches.  The light in the cell did not work during the entire duration of Abuiz's stay in the cell in A-Block.  There was also a window in the cell.  The cell in A-Block is in the intake area of the prison.  Conigliaro testified that the lights in the intake area were never shut off.  Abuiz disagreed with that testimony.  The court finds that although Abuiz was able to file grievances and legal documents while in the A-Block cell, his testimony was more credible than that of Conigliaro.  Abuiz was in A-Block 24 hours a day, whereas Conigliaro was not.  Moreover, Abuiz's testimony that the lights were turned down during the night comports with common sense more than Conigliaro's suggestion that the lights were always on.

    Abuiz notified Conigliaro and Brennan several times, but the problems were not fixed.  Abuiz also placed request forms, including a request on April 4, 2005, to have the light and water fixed, but they were never fixed.  Abuiz also told several corrections officers that his light and water did not work.   On April 7th, Abuiz filed a formal grievance. Abuiz again notified Conigliaro of his cell conditions on April 13th and again on April 19th.

    At the time, the prison did not keep logs or any record of the maintenance

work that was being done.  The warden or deputy warden would communicate to the maintenance man the work that needed to be done. Neither Conigliaro nor Brennan ever personally inspected Abuiz's cell.  The facilities maintenance man did check the water.  According to Abuiz, neither the water nor the light was fixed.  On May 2nd, Abuiz wrote a letter to the Pennsylvania Department of Health explaining that he had no light and no running water in his cell.

      The Pennsylvania Department of Corrections requires 20 candle-feet[3] of lighting for cells and access to a basin with hot and cold water 24-hours a day.  The July 2005 Department of Corrections inspection found no deficiencies in A-Block.  Conigliaro testified that he did not know if the amount of light coming out of the intake room and day room in A-block met the Pennsylvania Department of Corrections standards.  Brennan testified that the Department of Corrections standards were met throughout the prison, because he was never written up during an inspection for problems with the lighting or water. Plaintiff did not provide any evidence that the light did not meet the standards.  We must conclude therefore, for the same reasons as Brennan, that since the Department of Corrections never found that the light was deficient, it must have, at a minimum, met standards.

---

[3] A candle-foot, or foot candle, is a unit of illumination used to measure the illumination produced by a British standard candle at a distance of one foot.

Abuiz's health problems during his tenure in A-Block included cluster headaches, Bell's Palsy and a common cold. After he returned to incarceration in New York State, he had two teeth pulled. Abuiz attributes the need to have teeth pulled to his not being able to brush his teeth after every meal. There was no medical testimony provided to support this assertion. The court does not find this assertion to be credible.

After Abuiz left A-Block, none of the inmates subsequently housed in A-Block complained about the water or the lighting in the same cell.

Abuiz is of Hispanic/Latino descent. He has a dark tan skin color. When Abuiz was placed in A-Block on March 29, 2005, he was placed in one of the cells. A-Block has only two cells. The other cell housed Ramases Ramacus. Mr. Ramacus was placed in A-Block on March 28, 2005 because he flooded his cell in E-Block. Conigliaro testified that Mr. Ramacus was not moved to A-Block because he was black. We find Conigliaro's testimony that Mr. Ramacus was moved to A-Block for the same reason as Abuiz, specifically, the flooded cell, to be credible. After Mr. Ramacus was extradited back to New York State on April 4th, William Bowie, an African-American, was placed in Ramacus' former cell.

Abuiz told Brennan and Conigliaro that he felt he was being racially segregated. Other inmates would make racist comments to Abuiz, in front of

8

Conigliaro. Abuiz also told Conigliaro that corrections officers would make racial slurs. Conigliaro neither corroborated nor denied this testimony. Abuiz provided no other evidence or testimony to support his assertion.

Conigliaro testified that Abuiz, Bowie and Ramacus were not racially segregated. Brennan testified that there was no policy or procedure which specifically segregated inmates who were minorities. The policy, although not a written policy, was that all inmates were to be treated fairly and equally no matter what their race. Abuiz offered no proof of any prison policy to segregate. We find therefore, that there was no policy to segregate, and that Abuiz, Bowie and Ramacus were not placed in A-Block because of their respective races.

### B. Count I: Conditions of Confinement

As a pretrial detainee, Abuiz's conditions of confinement claim implicates the Fourteenth Amendment liberty interest, not the Eighth Amendment's protection against cruel and unusual punishment, although the "parameters of such an interest are coexistive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." Keller v. County of Bucks, 209 Fed. Appx. 201, 205 (3d Cir. 2006) (unpublished). "The Eighth Amendment was designed to protect those convicted of crimes and consequently the Clause applies only . . . after sentence and conviction." Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005)

9

("Hubbard I"). "When pretrial detainees challenge their conditions of confinement, we must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment." Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2007) "Hubbard II". "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Id.

The determination then, is whether the conditions imposed on Abuiz amounted to punishment. In making this determination,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on 'whether [the disability has] an alternative purpose. . . and whether it appears excessive in relation to [that] purpose.' . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'
>
> Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Hubbard II, 538 F.3d at 232, citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 447 (1979).

The Third Circuit has distilled Bell v. Wolfish into a two-step test. "[F]irst, whether any legitimate purposes are served by these conditions." Hubbard I. 399 F.3d at 159 (internal citations omitted). "[S]econd, whether these conditions are

rationally related to these purposes." Id. "In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." Id. at 159-160. "Our inquiry into whether given conditions constitute "punishment" must therefore consider the totality of the circumstances within an institution." Id. at 160.

The "analysis involved a further inquiry as to whether these conditions 'cause inmates to endure such genuine privations and hardship over an extended period of time' that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard II, 538 F.3d at 233 quoting Bell, 441 U.S. at 542. "In conducting this excessiveness analysis, we do not assay separately each of the institutional practices, but instead look to the totality of the conditions." Hubbard II, 538 F.3d at 233 (internal citations and quotation marks omitted).

Plaintiff did not prove by a preponderance of the evidence at trial that his conditions of confinement violated the United States Constitution. Although the burned out lightbulb and low pressure faucet would be inconvenient, we do not find, based on the evidence presented at trial, that the conditions amounted to a constitutional violation. Abuiz was able to drink water at meals, drink water and

11

Kool-Aid from a jug, shower, shave and brush his teeth. He also had a window in his cell and lighting from the intake area of the prison that allowed him to file grievances and legal documents. The Pennsylvania Department of Correction found no problems with the light or water in the prison. No inmate in the cell after Abuiz complained about the lighting or the water. Although inconvenient, the conditions did not cause Abuiz to endure a hardship over an extended period of time. There was no purpose to punish. The conditions in the cell were not perfect, and the defendants were slow to fix the problems, but they did not deprive Abuiz of any constitutional right. In sum, Abuiz did not meet the burden of proof at trial on the Due Process portion of his §1983 claim.

### C. Count III: Racial Segregation

> In order to demonstrate a violation of the Equal Protection clause, a plaintiff must show more than discriminatory impact. Rather, proof of racially discriminatory intent or purpose is required. Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker selected a particular course of action at least in part because of, and not merely in spite of, its adverse effects upon an identifiable group. Discriminatory impact is a relevant factor in evaluating discriminatory intent, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution.

Brown v. Byrd, 2000 U.S. Dist. LEXIS 17354, *13, 2000 WL 17808234 (E.D. Pa. December 1, 2000) (Katz, J) (internal citations and punctuation omitted). Plaintiff must show that defendants engaged in intentional or purposeful discrimination. See

Wilson v. Schillinger, 761 F. 2d 921, 929 (3d Cir. 1985) (internal citations omitted).

"[R]acial segregation, which is unconstitutional outside prisons, is unconstitutional within prisons, save for the 'necessities of prison security and discipline.'" Brown, 2000 U.S. Dist LEXIS at *14, citing Cruz v. Beto, 405 U.S. 319, 321, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972). "There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 136, 53 L. Ed 2d 629, 97 S. Ct. 2532 (1977).

Plaintiff did not prove by a preponderance of the evidence at trial that he was racially segregated while incarcerated, in violation of the United States Constitution. Abuiz was segregated from the general prison population. But he did not prove, by a preponderance of the evidence, that he was intentionally segregated by the defendants because of his race or skin color. When Abuiz arrived at the Susquehanna County Correctional Facility as a pretrial detainee, he was placed in the general population. However, because his cell was flooded and the suspicion that he was involved in the flooding, in addition to a strip search that produced contraband, Abuiz was moved out of the general population to A-Block in

13

prehearing detention status.

While Abuiz asserts that he was the only Hispanic/Latino inmate, and he was housed with the only two African-American inmates, he introduced no evidence that these were the only three inmates of color. Moreover, even if we accept Abuiz's assertion that these three inmates were the only inmates who were not white/Caucasian, and were segregated, Abuiz did not introduce any evidence that this was intentional or purposeful discrimination by Brennan and/or Conigliaro. In sum, Abuiz did not meet the burden of proof at trial on the Equal Protection portion of his §1983 claim.

**CONCLUSION:**

Abuiz did not meet his burden of proof on either claim at trial. Final judgment will be entered in favor of defendants and against plaintiff.

    s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY MEL ABUIZ, :
:
    Plaintiff, : No. 4:06-CV-01603
:
v. : (Judge McClure)
:
WARDEN WILLIAM BRENNAN, :
et. al. : (Magistrate Judge Smyser)
:
    Defendants. :

## ORDER

May 27, 2010

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

    1. The court finds that plaintiff did not prove, by a preponderance of the evidence at trial, any violation of the United States Constitution;

    2. The court finds in favor of William Brennan and Nicholas Conigliaro, and against Timothy Mel Abuiz on counts I and III; and

    3. The clerk is directed to enter final judgment in favor of all defendants and against plaintiff on all counts.

                                            s/ James F. McClure, Jr.
                                            JAMES F. McCLURE, JR.
                                            United States District Judge